UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **MARK FULTZ**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-991 |
| v. | ) | |
| | ) | |
| **USA Bayshore Properties, LLC,** a Michigan | ) | Judge: |
| limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, Mark Fultz, individually, by and through the undersigned counsel, Owen B. Dunn, Jr. and Valerie J. Fatica, Co-Counsel for Plaintiff, hereby files this Complaint against Defendant, USA BAYSHORE PROPERTIES, LLC, a Michigan limited liability company, for injunctive relief, damages, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), alleging as follows:

## JURISDICTION AND VENUE

1. This action is brought by the Plaintiff, Mark Fultz, individually, and on behalf of individuals similarly situated, pursuant to the enforcement provision of the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12188(a), against the Defendant as delineated herein.

2. The Court has jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, which governs actions that arise from the Defendant's violations of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; 28 U.S.C. § 1331, which gives the District Courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the

United States; 28 U.S.C. § 1343(3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government; and 28 U.S.C. § 1367, as Count II utilizes the same core of operative facts as Count I, and is therefore subject to supplemental jurisdiction.

3.  Venue is proper in the Western District of Michigan as venue lies in the judicial district of the property *situs*. The Defendant's property and operations complained of by Plaintiff are located in this judicial district, where the business of public accommodation is conducted, including the acts complained of herein.

## PARTIES

4.  Plaintiff, Mark Fultz ("Plaintiff" or "Mr. Fultz"), is a Florida resident, is *sui juris*, and qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.

5.  USA BAYSHORE PROPERTIES, LLC's place of public accommodation, a hotel commonly known as Bayshore Resort, is located at 833 E. Front Street, Traverse City, MI 49686 in Grand Traverse County. Plaintiff has patronized Defendant's facility and the businesses located therein as a place(s) of public accommodation.

6.  Upon information and belief, the hotel owned and operated by Defendant is non-compliant with the remedial provisions of the ADA. As Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, Defendant is responsible for complying with the obligations of the ADA. Defendant's facility as a hotel, which constitutes a place of public accommodation, fails to comply with the ADA and its regulations, as also described further herein.

7.  Mr. Fultz is an individual who, as a result of a stroke, is paralyzed on the right side of his body.  He uses a manual wheelchair for mobility and can occasionally walk short distances with the use of a cane.

8.  Raised in Michigan, Mr. Fultz has relatives including his sister, son, daughter, grandchildren, and cousins in suburban Detroit, Ann Arbor and Brighton areas.  He visits often and his family has continued to vacation together annually to Northern Michigan and Traverse City area specifically.  Plaintiff has frequented many establishments in the Grand Traverse County region and has been an overnight guest and bona fide customer at the hotel property that forms the basis of this lawsuit on multiple occasions.

9.  Mr. Fultz, along with relatives, patronized the Defendant's hotel on October 12-13, 2021. While at Defendant's place of public accommodation, Mr. Fultz encountered architectural barriers at the subject property that violate the ADA and its regulations. These barriers to access have endangered his safety and protected access to Defendant's place of public accommodation.

10. Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations. When acting as a "tester," Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least all of those that Plaintiff is able to access; and tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use

the public accommodation as members of the able-bodied community are able to do. Independent of other visits, Plaintiff also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.

11.   Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained in this complaint.   Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to visit the Defendant's place of business again on future occasions, not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the hotel and its amenities without fear of discrimination.

12.   The Defendant has discriminated against the individual Plaintiff by denying him access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 *et seq.*

13.   The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of

$500,000 or less).

14.     A preliminary inspection of the hotel owned by Defendant has shown that many violations of the ADA exist, whose remedy is readily achievable.   These violations include, but are not limited to:

Parking and Accessible Routes

   A.   There is no accessible route from the designated accessible parking to the hotel entrance partly due sidewalks without the required width, in violation of the ADA whose remedy is readily achievable.

   B.   There is no accessible route from the beach deck due to a door with a threshold in excess of ½ inch and non-compliant built up threshold ramp that does not allow for required level landing in front of entry, in violation of the ADA whose remedy is readily achievable.

   C.   There is no accessible route to the resort's beachfront, in violation of the ADA whose remedy is readily achievable.

   D.   There are cracks and changes in level along the accessible route to the hotel entrance, in violation of the ADA whose remedy is readily achievable.

   E.   There is not a continuous accessible route to connect the accessible facilities, accessible elements, and accessible spaces that are on the site, in violation of the ADA whose remedy is readily achievable.

Lobby Restrooms #1

   F.   The men's restroom water closet seat height is below the required range, in violation of the ADA whose remedy is readily achievable.

   G.   The men's restroom toilet paper dispenser is not mounted in the required location, in violation of the ADA whose remedy is readily achievable.

   H.   The men's restroom lavatory pipes are not insulated to protect against scalding or contact, in violation of the ADA whose remedy is readily achievable.

   I.   The amount of pressure to open the men's restroom door exceeds 5lbs, in violation of the ADA whose remedy is readily achievable.

   J.   Upon information and belief, the women's restroom contains similar barriers to accessibility, in violation of the ADA whose remedy is readily achievable.

Lobby Restrooms #2

K.  The lowered urinal in the men's room does not have required clear floor space for a forward approach due to the presence of the partition, in violation of the ADA whose remedy is readily achievable.

L.  The men's restroom toilet compartment does not have 60 inches of clear floor space around the water closet, in violation of the ADA whose remedy is readily achievable.

M.  The men's restroom water closet seat height is below the required range, in violation of the ADA whose remedy is readily achievable.

N.  The men's restroom lavatory pipes are not insulated to protect against scalding or contact, in violation of the ADA whose remedy is readily achievable.

O.  There are amenities in the men's restroom, including tissues, located above allowable reach range, in violation of the ADA whose remedy is readily achievable.

P.  The amount of pressure to open the men's restroom door exceeds 5lbs, in violation of the ADA whose remedy is readily achievable.

Q.  Upon information and belief, the women's restroom contains similar barriers to accessibility, in violation of the ADA whose remedy is readily achievable.

Guestrooms

R.  Upon information and belief the Bayshore Resort has a legally insufficient total number of hotel guestrooms fitted with mobility accessible features. Whereas, for a property with 120 guestrooms, there must be a minimum of 5 mobility accessible guestrooms without a roll-in shower and a minimum of 2 of mobility accessible guestrooms with a roll-in shower, totaling 7 designated mobility accessible guestrooms.

S.  Upon information and belief, the Bayshore Resort has no guestrooms fitted with a roll-in shower, in violation of the ADA whose remedy is readily achievable.

T.  The hotel's designated accessible guestrooms are not disbursed among the various classes of guestrooms, whereas the property offers a Bridal Suite, king bed rooms, two queen bed rooms, East Side Rooms, Bayfront Rooms, Spa Rooms, and various other suites. Each offers varying square footage, views, guest rental rates and amenities. However, guests who require accessible accommodations are restricted to fewer room classes and guestroom amenities, whereas able-bodied patrons and guests have access to reserve and stay at the full range of room classes. This is in violation of the ADA and its remedy is readily achievable.

<u>Guestroom #233 – Mobility Accessible King Bed Room with Bathtub</u>

U.  The guestroom lacks required signage designating it as mobility accessible and containing the international symbol of accessibility and tactile braille, in violation of the ADA whose remedy is readily achievable.

V.  The amount of pressure to open the guestroom door exceeds 5lbs, in violation of the ADA whose remedy is readily achievable.

W.  There are amenities in the guestroom, including clothing rack, shelves, towels, an iron, and extra blankets, located in excess of allowable reach range, in violation of the ADA whose remedy is readily achievable.

X.  The guestroom bathroom water closet flush control is not located on the open side of the unit, in violation of the ADA whose remedy is readily achievable.

Y.  The guestroom bathroom lavatory water and drain pipes are not insulated to protect against scalding or contact, in violation of the ADA whose remedy is readily achievable.

Z.  The guestroom bathroom bathtub faucet controls are not located between the rim of the tub and the centerline, in violation of the ADA whose remedy is readily achievable.

AA.  The guestroom bathroom shower spray unit is located above allowable reach range and does not have a non-positive shutoff, in violation of the ADA whose remedy is readily achievable.

BB.  Grab bars mounted inside the bathtub are of non-compliant lengths and mounted at incorrect heghts, in violation of the ADA whose remedy is readily achievable.

CC.  There is not compliant clear floor space around the guest bathroom water closet due to the sink overlapping the required space, in violation of the ADA whose remedy is readily achievable.

DD.  The guest bathroom water closet rear grab bar is not the proper length and does not extend adequately beyond centerline of the unit on the transfer side, in violation of the ADA whose remedy is readily achievable.

<u>Access to Goods & Services</u>

EE. The business center desk lacks required knee clearance and clear floor space for use by patrons who use wheelchairs, in violation of the ADA whose remedy is readily achievable.

FF. Some amenities in the breakfast area are located above allowable reach range, in violation of the ADA whose remedy is readily achievable.

GG.    There is no lowered accessible registration service counter, however, there exists a lowered counter adjacent the registration center but this is used strictly as a self-service coffee station and is not for use by guests checking in and out, in violation of the ADA whose remedy is readily achievable.

HH.    There are no accessible dining surfaces on the beach deck, in violation of the ADA whose remedy is readily achievable.

II. There are house phones throughout the property mounted in excess of allowable reach range, in violation of the ADA whose remedy is readily achievable.


Policies and Procedures and other Services


JJ. The Defendant lacks or has inadequate defined policies and procedures for the benefit and assistance of disabled patrons and guests, including a policy for maintaining its accessible features.

KK.    The Bayshore Resort website, https://www.bayshore-resort.com, does not identify or describe accessible features in sufficient detail to reasonably permit individuals with disabilities to assess independently whether the hotel or guestroom meets his or her accessibility needs, in violation of 28 CFR § 36.302(E)(1)(ii).

LL. Guests who require are unable to reserve mobility accessible rooms on the Bayshore Resort website and only non-designated accessible rooms can be reserved, in violation of 28 CFR § 36.302(E)(1)(i) which requires individual with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

MM.   The Defendants' inadequate procedures for the benefit of its patrons with disability extend to its failure to conduct a self-survey of its facilities and amenities that has resulted in discriminatory conduct toward Mark Fultz.

15.    The discriminatory violations described in Paragraph 14 by Defendant are not an exclusive list of the ADA violations at the place of public accommodation owned and operated by Defendant.  Plaintiff requires further inspection of the Defendant's place of public accommodation in order to photograph and measure *all* of the discriminatory acts

violating the ADA and all of the barriers to access.  The Plaintiff, has been denied access to Defendant's accommodations; benefit of services; activities; and has otherwise been discriminated against and damaged by the Defendant, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITES ACT

16.     Plaintiff restates the allegations of ¶¶1-15 as if fully rewritten here.

17.     The facility at issue, as owned by USA BAYSHORE PROPERTIES, LLC is a public accommodation and service establishment, and as such, must be, but is not, in compliance with the Americans with Disabilities Act ("ADA") or Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

18.     Plaintiff was unlawfully denied full and equal enjoyment of the goods, services, facilities, privileges, and advantages of the property on the basis of disability due to Defendant's failure to comply with Title III of the Americans with Disabilities Act and its accompanying regulations, as prohibited by 42 U.S.C. § 12182, *et seq*. Defendant will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the facility, including those specifically set forth herein, and make the facility accessible to and usable by persons with disabilities, including Plaintiff.

19.     The Plaintiff, and others similarly-situated, is presently without adequate remedy at law

and is damaged by irreparable harm.  Plaintiff reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the Facility, including those set forth herein.

20.    Pursuant to 42 U.S.C. §12187, Plaintiff requests that the Court issue an injunction requiring Defendant to make such readily achievable alterations as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages on its property to disabled persons. In connection with that relief, Plaintiff requests reasonable attorney's fees and costs of maintaining this action.

<u>COUNT II</u>
**VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
M.C.L. § 37.1301 *et seq*.**

21.    Plaintiff restates the allegations of ¶¶1-20 as if fully rewritten here.

22.     Defendant USA BAYSHORE PROPERTIES, LLC's hotel is a "place[s] of public accommodation" pursuant to M.C.L §37.1301(a).

23.    Defendant committed an unlawful act pursuant to M.C.L §37.1302(a) by denying Plaintiff the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges. Whereas, Mr. Fultz was not able to reserve his own accommodations in the manner as do able bodied guests on the internet.  This property has excluded him from certain of its amenities such as beach access. And he personally experienced numerous barriers to his personal access and enjoyment of the hotel including in his own transient lodging guestroom.

24.    Pursuant to M.C.L §37.1606, Plaintiff is entitled to compensatory and applicable damages, attorney's fees and costs, in an amount to be determined at trial, but in any event not less

than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

**WHEREFORE**, Plaintiff demands,

For **COUNT I**, an injunction requiring Defendant to make all readily achievable alterations and institute policies and procedures to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons, and the reasonable attorneys fees and costs of maintaining this action; and,

For **COUNT II**, compensatory and exemplary damages, attorneys fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons.

Respectfully Submitted,

*Counsel for Plaintiff:*

/s/ Owen B Dunn Jr.
Owen B. Dunn, Jr., Esq. (p66315)
Law Offices of Owen Dunn, Jr.
The Ottawa Hills Shopping Center
4334 W. Central Ave., Suite 222
Toledo, OH 43615
(419) 241-9661 – Phone
Monroe, MI (734) 240-0848
(419) 241-9737 - Facsimile
dunnlawoffice@sbcglobal.net

and

Valerie J. Fatica (0083812) *
The Ottawa Hills Shopping Center

4334 W. Central Ave., Suite 222
Toledo, OH 43615
Phone: (419) 654-1622
Email:  valeriefatica@gmail.com
*Admitted to practice in the Western District of
Michigan